IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 4:19CR3094 |
| vs. | |
| JONATHAN MANZI, | ORDER |
| Defendant. | |

Defendant has moved for issuance of subpoenas under Fed. R. Crim. P. 17(c). (Filing No. 175). The government objects. (Filing No. 179). For the reasons stated below, the government's objection will be sustained, and Defendant's motion will be denied.

FACTUAL BACKGROUND

Defendant is the President of Ink Labs, Inc. ("Ink"), which provides convenience printer services predominately on college and university campuses. In 2017, an Ink sales representative, Troy Pepper (Pepper) left the company and transitioned to employment at an Ink competitor, Wepa, Inc. (Filing No. 32 at CM/ECF p. 3).

On May 9, 2018, the FBI was investigating the possible intrusion into Pepper's and Wepa's email accounts. In furtherance of that investigation, the FBI obtained and served a warrant for records held by Google, Inc. (Filing No. 32 at CM/ECF p. 2). Google responded to the warrant in June of 2018. FBI Special Agent Jacob Foiles began reviewing the documents received and encountered what he believed could be attorney-client privileged communications. He contacted the United States Attorney's Office ("USAO"). The USAO promptly and

appropriately responded by creating a filter team (or taint team) tasked with sorting through the Google production to identify and screen attorney-client privileged information. Special Agent Foiles was reassigned to the filter team and AUSA Sean Lynch was assigned as its counsel; Special Agent Matt Saad was enlisted to replace Foiles as the FBI's agent for the investigation and AUSA Steve Russell is prosecution counsel (collectively the "prosecution team").

In October of 2018, the filter team disclosed 60 emails to the prosecution team that the filter team believed were not privileged.

The grand jury for the District of Nebraska entered a four-count indictment against Defendant on August 21, 2019. (Filing No. 1). Defendant is charged with four counts of unauthorized computer access in violation of 18 U.S.C. § 1030(a)(2) and (c)(2)(B)(i) and (iii). Counts I and IV allege Manzi unlawfully accessed Pepper's Google email account. Counts II and III allege Manzi unlawfully accessed Wepa's Dropbox storage account. The unlawful computer intrusions allegedly occurred on July 1 and July 2, 2017.

The filter team completed its work on October 18, 2019, and it provided all items that it had marked nonprivileged to the prosecution team. (Filing No. 61 at CM/ECF p. 3). The filter team also provided Defense counsel with 1) a copy of all items it had marked as nonprivileged; and 2) a list of all items it marked as privileged. (Filing No. 118 at CM/ECF p. 3). Defense counsel disagreed with the filter team's assessment, claiming many of the documents marked nonprivileged were in fact privileged communications. The government's prosecution team ceased any review of the Google document production marked as nonprivileged by the filter team. As of that time, in addition to the 60 items produced on October 23, 2018, the prosecution had reviewed only an additional 60 items – for a total of approximately 120 items. (Filing No. 61 at CM/ECF p. 4).

2

In June of 2020, Defendant filed a motion claiming the prosecution had reviewed privileged communications. An evidentiary hearing was held on March 5, 2021. During that hearing, Defendant provided false testimony as to his claimed business relationship with Timothy Mercier. Specifically, I found that contrary to Defendant's testimony, Mercier was not Defendant's business associate, was therefore a third party to the communications forwarded to him by Defendant, and as to those emails, any attorney-client privilege for communications within those emails, if any, was waived. (Filing No. 124).

On May 17, 2021, the undersigned magistrate judge entered findings and a recommendation on the attorney-client privilege issue. It also ordered Defendant to review the documents and designate those he believed were privileged by June 21, 2021. Defendant objected. Defendant's objections were overruled by Judge Gerrard in their entirety on July 29, 2021. As to Defendant's claim that he should not be ordered to sift through the Google documents and identify those he believes are privileged, Judge Gerrard's opinion stated:

> The Court has little sympathy for the defendant in that regard: there is nothing erroneous at all, much less clearly erroneous, about asking the defendant to review his own correspondence to assert his own privilege claims. It is, after all, the burden of a party asserting a privilege to show that the privilege applies. . .. It is, again, not clear what the defendant wants, just what he doesn't: he says that "[t]he government should be ordered to conduct a screening process, in collaboration with the defense, that will be effective" but doesn't describe what that collaboration would look like, except that it wouldn't look like what was actually ordered. The Court is not persuaded by the defendant's passive-aggressive approach to resolving these issues.

(Filing No. 149, at CM/ECF pp. 4-5).

The May 17, 2021 order contemplated that any dispute over whether a document was privileged would be submitted to me for *in camera* review by the

3

end of July 2021.[1] After Judge Gerrard's July 29, 2021 order was entered, with defense counsel's agreement, Defendant's deadline to perform his privilege review was extended to October 15, 2021, (Filing No. 151); and then to a rolling disclosure every two weeks during December 2021, (Filing No. 153). Defendant timely identified approximately 10,000 documents (1100 emails) he believed were privileged; as of January 14, 2022, the government had reviewed Defendant's privilege log and as to 389 documents (about half of which were duplicates), disagreed with Defendant's privilege designation. (Filing No. 162). On January 14, 2022, the government stated it would begin identifying and disclosing to Mr. Russell those documents that are not in dispute. Id. In accordance with the timetable suggested by counsel, the court set a call for March 15, 2022, to set the pretrial motion deadline and the trial date, believing that by then, Mr. Russell would have at least some, if not all, of the nonprivileged documents in his possession. Id.[2]

That did not happen. As of March 15, 2022, other than the 120 nonprivileged documents reviewed early in this case, Defendant and the filter team have not released any of the Google documents for the prosecution's review. (Filing No. 184).

---

[1] The undersigned magistrate judge had assumed that Defendant had already performed his own document review and identified those documents he believed were privileged during the 10 months before he represented to this court that the case must be dismissed for alleged disclosure of privileged information to the prosecution. That assumption was apparently incorrect.

[2] The parties' respective software programs for document review and privilege identification are apparently incompatible. Even if I assume defense counsel and the filter team were unable to find and use compatible technology during the past two years of this dispute, I currently do not understand why incompatible software would wholly foreclose producing documents to Mr. Russell in a PDF format. I note that Defendant's 10,000 documents identified as privileged were provided to the government's filter team as PDFs. (Filing No. 162, audio file at 4:15-4:28).

Against this backdrop, Defendant now moves for an order permitting him to subpoena documents from the victims of his alleged crimes. The subpoenas would demand production of any documents accessed from the victims' accounts between July 1 and July 7, 2017, along with any logs, screenshots, or other data indicating what files were accessed. (Filing No. 175, at CM/ECF pp. 2-3).

## ANALYSIS

1)   Noncompliance with procedural law.

Pursuant to the court's progression order, "[t]he filing, briefing, and hearing of pretrial motions, including ex parte motions and applications, shall be governed by NECrimR 12.1–12.5." (Filing No. 10, at CM/ECF p. 1). Nebraska Criminal Rule 12.3(b)(3) states:

> A motion seeking discovery or disclosure of evidence must include a statement verifying that (A) the moving party's attorney conferred with the opposing attorney in person or by telephone in a good-faith effort to resolve the issues raised in the motion and (B) the parties were unable to reach an agreement.

NECrimR 12.3(b)(3). The court's progression order further emphasizes this meet and confer requirement, and its application to Defendant's pending motion for issuance of a subpoena, stating:

> In the event that any motions are filed seeking ... discovery of facts, documents, or evidence, including *Brady* material, as part of the motion the moving party shall recite that counsel for the movant has spoken with opposing counsel regarding the subject of the motion in an attempt to reach agreement without the involvement of the court and that such attempts have been unsuccessful. The motion shall further state the dates and times of any such conferences.

See Filing No. 10, ¶ 3(b).

Further, the undersigned magistrate judge verbally reminded defense counsel—as to the exact disclosure issues underlying the pending motion—that they must comply with the meet and confer requirements before filing this motion. (Filing No. 162, audio at 17:45-19:15).

NECrimR 12.3(b)(3) and the above-quoted language of the court's progression order require the parties to attempt to resolve discovery disputes before seeking court assistance. The laboring oar for resolving discovery disputes should, and under this court's rules and progression order, does rest in the first instance with the parties. Requiring the parties to engage in good faith discussions before filing discovery motions allows for faster case progression and a more efficient use of judicial and attorney resources. Here, a mere month before the motion was filed, the court clearly explained—on the record—Nebraska's prerequisites for filing a pretrial motion to obtain facts, documents, or evidence in a criminal case. Even so, Defendant did not comply with this court's local rules and written order.

Defendant's motion to serve subpoenas will be denied on procedural grounds. United States v. Turner, No. 4:17CR3121, 2018 WL 400760, at *3 (D. Neb. Jan. 12, 2018), aff'd, 934 F.3d 794 (8th Cir. 2019).

2) Substantive law

Under Rule 17(c)(1) of the Federal Rules of Criminal Procedure, "[a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c)(1). The trial court considers the facts at issue when deciding whether to enforce a pretrial subpoena duces tecum. United States v. Nixon, 418 U.S. 683, 702 (1974). A

6

party seeking to serve and enforce compliance with subpoenas issued in a criminal case must show:

> (1) that the documents are evidentiary and relevant;
>
> (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence;
>
> (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and
>
> (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

[Nixon](), 418 U.S. at 699–700. The following, which addresses each of these requirements as applied to the facts of this case, establishes that even assuming Defendant has complied with this court's procedural rules, his motion to serve subpoenas must be denied.

    a)    Evidentiary and relevant

Manzi's proposed subpoenas request documents which Pepper and Wepa believe were unlawfully accessed during the dates recited in the indictment. The information requested is relevant.

    b)    Otherwise available with the exercise of due diligence

Manzi argues the government has produced only six documents that it contends he unlawfully accessed. He states the government did that only after Manzi filed a motion for bill of particulars and that even to date, the government refuses to commit that no other documents were unlawfully accessed by Manzi.

Defendant argues that since the government will not confirm that no other documents were accessed, he must subpoena the information from Pepper and Wepa. Manzi argues the government should have gathered all the information it would use to prosecute this case long before the case was presented to the grand jury.

The government's prosecution counsel responds that to the extent Pepper and Wepa know, the government identified the documents unlawfully accessed at the outset of this case—before Manzi's current primary counsel had entered an appearance. ([Filing No. 162](#), audio file). It states it gathered copies of the actual documents from Pepper and Wepa in response to the motion for bill of particulars, and that it will continue to disclose Rule 16 discovery when and if it is received. But it cannot affirmatively state that no other documents were accessed by Manzi until it sees the unprivileged documents received in response to the Google warrant. As the government points out, and the record of this case establishes, Manzi has seen all of those documents; the government's prosecution counsel has not.

The government is correct. Manzi's claim that the government should have collected all of its evidence before presenting its case to a grand jury is disingenuous. As defense counsel well knows, the government need not present all of its evidence to the grand jury and for good reason: Evidence often surfaces after the indictment is secured. Provided the government complies with Rule 16, Brady, and Jencks, evidence obtained post-indictment is equally available for prosecuting the case.

Moreover, the prosecution team tried to collect and review evidence from Google before seeking the indictment in this case. But to date, in accordance with ethical rules and this court's orders, the prosecution has not reviewed the

vast majority of the documents received from Google over four years ago. The prosecution team knows about the six documents identified by Pepper and Wepa, but Pepper and Wepa may not know the extent of the unlawful intrusion into their email and Dropbox accounts. As stated by the government, "until all the emails not subject to the attorney-client privilege are viewed by the United States, the United States has no way of knowing what additional evidence of intrusion exists." ([Filing No. 180, at CM/ECF p. 5](#)). In contrast, the documents have been in Manzi's possession for over two years, and his counsel has reviewed them all to assure no privileged documents are disclosed. Under these facts, Manzi cannot plausibly argue that the prosecution team is withholding relevant information that Manzi does not have and cannot obtain without serving subpoenas on Pepper and Wepa.

    c)    Preparation for trial

For similar reasons, Manzi cannot credibly argue that he is unable to prepare for trial without subpoenaing documents from Pepper and Wepa. Those victim sources have identified and provided the documents they know about, and Manzi has received those documents. Even if Manzi's subpoenas were served, there is nothing to indicate he would receive more from Pepper and Wepa than he already has. Manzi also has all the documents provided by Google. And when given a chance to do so, the prosecution team will review those documents and disclose any additional Rule 16 materials.

    d)    Good faith intent

If permitted, Manzi's subpoenas would cast a wide net to discover whether Pepper or Wepa have further documentation showing Manzi allegedly accessed their email accounts. But Rule 17(c) "was not intended to provide an additional

means of discovery," (Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951)), which is the precise—and improper—purpose of Manzi's proposed subpoenas.

The government has objected to Defendant's subpoenas as unreasonable and oppressive. "On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). For the reasons stated above, the court finds Defendant's subpoenas are not permitted under Rule 17(c). Moreover, as evident from his briefing, Defendant intends to serve subpoenas on crime victims unless the government foregoes any opportunity to review and select additional relevant evidence from the Google document production that the prosecution team has never seen. Defendant's demand—or ultimatum—is unreasonable and will unnecessarily burden Pepper and Wepa.

Accordingly,

IT IS ORDERED:

1) The government's objection, (Filing No. 179), is sustained.

2) Defendant's Motion for Issuance of Subpoenas Under Fed. R. Crim. P. 17(c), (Filing No. 175), is denied.

March 24, 2022.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge
