UNITED STATES DISTRICT COURT

DISTRICT OF NEBRASKA

_____

UNITED STATES OF AMERICA,      )
                               )    Case No. 4:19CR3094
          Plaintiff,           )
                               )
          vs.                  )    Omaha, Nebraska
                               )    December 14, 2022
JONATHAN MANZI,                )    1:03 p.m.
                               )
          Defendant.           )
_____  )


     BEFORE:  THE HONORABLE CHERYL R. ZWART, MAGISTRATE JUDGE

                 TRANSCRIPT OF PROCEEDINGS

                  CHANGE OF PLEA HEARING

APPEARANCES:
For the Plaintiff:
    U.S. Attorney's Office
    By:  Steven A. Russell, Esq.
    100 Centennial Mall North
    Suite 487, Federal Building
    Lincoln, Nebraska 68508

For the Defendant:
    Weinhardt Law Firm
    By:  Mark E. Weinhardt, Esq.
    2600 Grand Avenue, Suite 450
    Des Moines, Iowa 50312




Transcriptionist:
    Kelly Custard
    (402) 960-2198
    kelly.custard@accuwritesystems.com

        Proceedings Recorded by Electronic Sound Recording
           Transcript Produced by Transcriptionist

1                      P-R-O-C-E-E-D-I-N-G-S

2          THE COURT:  We're on the record in case number

3    4:19CR3094, United States of America versus Jonathan Manzi.

4          Counsel, please enter your appearance.

5          MR. RUSSELL:  Your Honor, please enter the appearance

6    of Steven Russell, on behalf of the United States.

7          MR. WEINHARDT:  Mark Weinhardt, on behalf of the

8    Defendant, Jonathan Manzi, Your Honor.

9          THE COURT:  All right.  Mr. Manzi, you are here today

10   because I've been told that you want to plead guilty to an

11   information.  Before we can go down that path, the information

12   needs to be filed, and it can't be filed unless I am convinced

13   that you understand the difference between an indictment and an

14   information; that you understand what this information alleges

15   and what the possible penalties are; and that you are, in fact,

16   agreeing to the filing of the information.

17         So what I'm going to start with today is have Mr.

18   Russell explain to you the difference between an indictment and

19   information.  Then he's going to explain to you what this

20   information says and the possible penalties, and then I'll have

21   some questions for you.

22         So for starters, listen to him.

23         Mr. Russell.

24         MR. RUSSELL:  Yes. Give me one second, Your Honor.

25         THE COURT:  Okay.  Is this an information, though, for

1 a misdemeanor?

2    MR. RUSSELL:  Yes, it is.

3    THE COURT:  He's not entitled to an indictment on that.

4    MR. RUSSELL:  No, he's not.

5    THE COURT:  So we don't have to go through that path.

6    MR. RUSSELL:  Okay.

7    THE COURT:  But I do want you -- yeah.  Yeah.  I -- you

8 know what?  What I do need you to do, though, Mr. Russell, is

9 explain to him what the misdemeanor says and what the possible

10 penalties are.

11    MR. RUSSELL:  All right.  Mr. Manzi, the information in

12 this case is that you will plead -- the information is a

13 violation of 18 United States Code, Section 1030(a)(2) and

14 (c)(A)(2), which is basically a misdemeanor saying that you

15 intentionally and without authorization accessed a protected

16 computer -- in this case, protected computer of information

17 related to Google and related to Wepa -- or excuse me -- related

18 to Dropbox.

19    With respect to that information, if you plead guilty

20 to that information, the maximum penalty for each of those two

21 counts is a maximum penalty of up to one year in prison, maximum

22 fine of up to $100,000, or both such fine and imprisonment, a

23 mandatory special assessment of $25 per count, and a term of

24 supervised release of not more than one year following any

25 period of incarceration.

1          Sir, do you understand the nature of the crime charged

2   in -- two crimes charged in the information and the maximum

3   possible penalty?

4          THE DEFENDANT:  I do.

5          THE COURT:  All right.  We've already talked to you

6   about your right to remain silent.  Do you recall all of those

7   rights?

8          THE DEFENDANT:  Yes, I do, Your Honor.

9          THE COURT:  We've talked to you about your right to

10  counsel, and you have your counsel representing you here today,

11  and you're not requesting appointed counsel.  Is that correct?

12         THE DEFENDANT:  That is correct.

13         THE COURT:  All right.  Do you understand the charges

14  and the possible penalties in this misdemeanor information?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  Having heard that information, do you want

17  to plead guilty?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  I have, in front of me, a petition to enter

20  a plea of guilty and a plea agreement, both of which appear to

21  have been signed by you.  Did you go over these documents with

22  your lawyer?

23         THE DEFENDANT:  I have.

24         THE COURT:  Going to the petition -- it has all those

25  questions and answers in it -- did you answer each of those

1  questions truthfully?

2          THE DEFENDANT:  I have, Your Honor.

3          THE COURT:  Were your answers recorded in the document

4  correctly?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  And after it was completed, did you sign

7  it?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Going to the plea agreement, did you read

10  it?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Did your attorney explain it to you?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Were there any questions about its meaning

15  that he was unable to answer?

16          THE DEFENDANT:  No, Your Honor.

17          THE COURT:  And after going through the document, did

18  you sign it?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  We're going to go through the plea

21  colloquy.

22      (The oath was administered to the Defendant.)

23          THE COURT:  You are now under oath.  You've sworn to

24  tell the truth, which means if you lie during this proceeding,

25  you can be separately prosecuted for the crime of perjury.  Do

1   you understand?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  I also need to explain to you that I am not

4   your sentencing judge, and I am not the judge who will determine

5   whether this guilty plea is accepted and whether the plea

6   agreement is accepted.  Those matters will be taken up by Judge

7   Gerrard, who is your sentencing judge.  But what I can do for

8   you today is gather some information from you and make a

9   recommendation to Judge Gerrard on those issues.  Do you agree

10  to proceed before me?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  With respect to the petition and the plea

13  agreement, when you completed those documents, were you under

14  the influence of drugs or alcohol or having any difficulty

15  thinking?

16         THE DEFENDANT:  No, Your Honor.

17         THE COURT:  Are you having -- are you under the

18  influence of anything right now?

19         THE DEFENDANT:  No, Your Honor.

20         THE COURT:  Are you having any difficulty hearing,

21  understanding, and answering my questions?

22         THE DEFENDANT:  No, Your Honor.

23         THE COURT:  Has anybody threatened you to get you to

24  plead guilty?

25         THE DEFENDANT:  No, Your Honor.

1    THE COURT:  Has anybody promised you anything other

2    than the promises in the plea agreement to get you to plead

3    guilty?

4    THE DEFENDANT:  No, Your Honor.

5    THE COURT:  Do you understand that if the court accepts

6    your plea of guilty, you will be found guilty of a misdemeanor?

7    THE DEFENDANT:  Yes, Your Honor.

8    THE COURT:  Do you understand you have the right to

9    plead not guilty and make the Government try to prove this case

10   at trial?

11   THE DEFENDANT:  Yes, Your Honor.

12   THE COURT:  Do you understand you are giving up your

13   trial rights by pleading guilty?

14   THE DEFENDANT:  Yes, Your Honor.

15   THE COURT:  You've been represented in this case by Mr.

16   Weinhardt.  Is that correct?

17   THE DEFENDANT:  Yes, Your Honor.

18   THE COURT:  Do you believe that he has investigated

19   this case sufficiently so that you know what to do today?

20   THE DEFENDANT:  Yes, Your Honor.

21   THE COURT:  Are you satisfied with his representation?

22   THE DEFENDANT:  Yes, Your Honor.

23   THE COURT:  Do you understand that if you chose to go

24   to trial, you would have the right to counsel representation at

25   the trial?

1    THE DEFENDANT:  Yes, Your Honor.

2    THE COURT:  Do you understand that if you could no

3 longer afford counsel representation, counsel would be appointed

4 for you at no cost to you?

5    THE DEFENDANT:  Yes, Your Honor.

6    THE COURT:  Do you understand that if you chose to go

7 to trial, you would have a jury trial?

8    THE DEFENDANT:  Yes, Your Honor.

9    THE COURT:  Do you understand that at that trial, you

10 would have the right to see and hear the witnesses who testify

11 against you and to have them cross-examined on your behalf?

12    THE DEFENDANT:  Yes, Your Honor.

13    THE COURT:  Do you understand you would have the right

14 to call witnesses for you, and if they would not come

15 voluntarily, you could get a court order called a subpoena to

16 make them come and testify?

17    THE DEFENDANT:  Yes, Your Honor.

18    THE COURT:  Do you understand that if you chose to go

19 to trial, you could testify yourself if you wanted to or you

20 could stay silent?

21    THE DEFENDANT:  Yes, Your Honor.

22    THE COURT:  Do you understand that if you stayed silent

23 at the trial, the jury would not be allowed to consider that

24 silence in deciding whether you are guilty?

25    THE DEFENDANT:  Yes, Your Honor.

1     THE COURT:  And do you understand that if you chose to

2  go to trial, the Government would not get a conviction against

3  you unless it was able to prove to every single juror that you

4  are guilty beyond a reasonable doubt?

5     THE DEFENDANT:  Yes, Your Honor.

6     THE COURT:  Are you willing to give up all of those

7  trial rights and plead guilty in this case instead?

8     THE DEFENDANT:  I am, Your Honor.

9     THE COURT:  You're looking at -- one moment -- get the

10  plea agreement up again.

11     All right.  As to the statutory sentences you're

12  looking at, on Count I and Count II, you have the same statutory

13  sentences that apply:  Up to a year in prison, a fine of up to

14  $100,000 for each of those, supervised release of up to a year,

15  and a special assessment, per count, of $25, for a total of $50.

16     Is that your understanding of what is the statutory

17  range we're looking at here?

18     THE DEFENDANT:  Yes, Your Honor.

19     THE COURT:  Okay.  What you have is an 11(c)(1)(C) plea

20  agreement, and that is an agreement between you and the

21  Government regarding what your sentence ought to be in this

22  case.  The agreement indicates that you have agreed that your

23  maximum sentence would be six months in prison.

24     Did you agree to that?

25     THE DEFENDANT:  Yes, Your Honor.

1    THE COURT:  Mr. Russell, you're on mute.

2    MR. RUSSELL:  Your Honor, the plea agreement -- it is

3    an 11(c)(1)(C) agreement to a minimum of six months.  How the

4    court wishes to impose that six -- a minimum -- a minimum of up

5    to six months -- let me try that again in English.

6    A minimum of six months -- how the judge imposes the

7    sentence between a minimum of six months and whatever else the

8    judge intends to impose, the length of that sentence will be

9    determined by the court.

10    So the 11(c)(1)(C) agreement is that the parties agree

11    that Mr. Manzi's sentence will be six months of a sentence -- at

12    least six months of the sentence imposed by the court.  How the

13    court wishes to impose that -- house arrest, community

14    confinement, imprisonment, whatever, the judge --

15    THE COURT:  Okay.

16    MR. RUSSELL:  -- has the authority -- has the ability

17    to do that.  I believe that's the agreement of the parties.

18    THE COURT:  Okay.  Mr. Manzi, you listened as Mr.

19    Russell described that.  Is that correct?

20    THE DEFENDANT:  Yes.  Yes, Your Honor.

21    THE COURT:  Was that your agreement with the

22    Government?

23    THE DEFENDANT:  Yes.  That's the agreement with the

24    Government.

25    THE COURT:  I may have said up to six months before,

1  and it's supposed to be a minimum of six months.  So it could go

2  beyond that.  You understand that?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  All right.  And, also, what they're saying

5  is -- there are different ways that Judge Gerrard could impose

6  this.  He could say that you're going to federal prison, he

7  could also say that you're on house arrest, or he could go -- he

8  could say that you're in a community jail.  And that's going to

9  be up to him to decide at the time of sentencing.  Do you

10 understand that?

11         THE DEFENDANT:  I do, Your Honor.

12         THE COURT:  All right.  Now, when he decides that, he's

13 also going to decide if he agrees with this plea agreement at

14 all, and he doesn't have to.  Do you understand that?

15         THE DEFENDANT:  I do.

16         THE COURT:  So now we're going to talk about what he's

17 going to look at.  He's going to look at the sentencing

18 guidelines.  Have you discussed those with your attorney?

19         THE DEFENDANT:  I have.

20         THE COURT:  He's also going to look at the amount of --

21 the number of people that were harmed or the businesses that

22 were harmed by your conduct, the amount of harm that was caused,

23 any criminal history you may have, and whether this is a repeat

24 of any of that history, those types of things.  Do you

25 understand?

1      THE DEFENDANT:  I do, Your Honor.

2      THE COURT:  And once he considers all of that relevant

3  conduct in the context of the sentencing guidelines, then he

4  will decide whether a minimum of six months in prison is an

5  acceptable sentence for you, and he'll also decide how you're

6  going to serve it.  Do you understand?

7      THE DEFENDANT:  I do, Your Honor.

8      THE COURT:  If he decides that that sentence is

9  incorrect, then you will be allowed to withdraw your plea of

10  guilty, and you can either plead guilty to -- without a plea

11  agreement, with a different plea agreement, or go to trial.  Do

12  you understand that?

13      THE DEFENDANT:  I do, Your Honor.

14      THE COURT:  But once he sentences you -- if he agrees

15  with this, once he sentences you to six months or more in

16  prison, you will be required to serve all of that time.  Do you

17  understand that?

18      THE DEFENDANT:  I do, Your Honor.

19      THE COURT:  Now, after you serve your time in prison,

20  your sentence may not be over.  You may be subject to what is

21  called supervised release at that point, and I want to make sure

22  you understand what that is.

23      At the time of sentencing, Judge Gerrard may include,

24  in his sentencing order, a list of rules called conditions of

25  release that you have to follow for up to a year after getting

1  out of prison.  Do you understand that?

2          THE DEFENDANT:  I do, Your Honor.

3          THE COURT:  Now, when you are subject to supervised

4  release, you are under the supervision of the court's probation

5  staff.  If you were to violate the terms of your supervised

6  release, that would be a violation of your sentencing order and

7  for that, you could go to jail.  Do you understand?

8          THE DEFENDANT:  I do.

9          THE COURT:  And do you understand that if you violate

10  the terms of your supervised release by committing another

11  crime, your penalty or sentence on that new crime could be

12  greater than it otherwise would have been merely because you

13  were still serving a sentence in this case when you committed

14  yet another crime.  Do you understand?

15          THE DEFENDANT:  I do.

16          THE COURT:  All right.  Now, as I look at this, there

17  is an agreement on restitution.  It appears that you have agreed

18  that you will pay restitution to Wepa -- or Wepa, however it's

19  pronounced, in the amount of a total of $630,000, of which

20  $400,000 has already been paid.  Is that correct?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  And that you are paying restitution to T.P.

23  in the amount of $25,000.  Is that correct?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  All right.  We've talked about the plea

1　agreement to a degree but not entirely.  At this point in time,

2　I'm going to have Mr. Russell explain it more fully.  Do listen

3　to what he says because I'll have questions about that.

4　　　　Mr. Russell.

5　　　　MR. RUSSELL:  Your Honor, the plea agreement in this

6　matter is that the Defendant agrees to plead guilty to Counts I

7　and II of the information.  In exchange, in essence, the United

8　States will move to dismiss the indictment at the time of

9　sentencing.  The United States further agrees that the Defendant

10　will not be federally prosecuted for the crimes disclosed by

11　discovery material delivered to Defendant's attorney as of the

12　date this agreement was signed.

13　　　　I would include in that, Your Honor, just for the

14　record, I believe there was a transcript of a hearing, I want to

15　say it was in March, of 2021, that have been provided to both

16　counsel through court reporter.  This agreement also includes

17　that any -- any federal crimes that may have been committed in

18　the course of that testimony or that hearing that was --

19　　　　THE COURT:  Understood.

20　　　　MR. RUSSELL:  The nature of the offense and factual

21　basis and the penalties are set forth in the plea agreement.  In

22　addition to the fact that the agreement is limited to the United

23　States Attorney's Office and cannot bind any other federal,

24　state, or local prosecuting, administrative, or regulatory

25　authority.  As the court has already indicated, this is an

1   11(c)(1)(C) agreement that the parties agree that the Defendant

2   will receive a minimum of six months of some form of penalty

3   that can be determined by the court, either house arrest,

4   community confinement, incarceration, or any -- really, any way

5   that would dispose of that six months, up to -- theoretically,

6   up to two years [INDISCERNIBLE].

7        The parties further agree, pursuant to Rule

8   11(c)(1)(C), that the Defendant will pay restitution to Wepa in

9   the amount of $630,000, of which $400,000 has already been paid,

10  with an additional $25,000 to the victim identified as T.P. in

11  the information.

12       All other considerations, including the length and

13  conditions of any -- of any sentence and the length and terms of

14  any period of supervised release will be decided by the district

15  court.  The parties may not -- agree that the Defendant may not

16  request any other additional recommendations other than in

17  compliance with what the Rule 11(c)(1)(C) agreement talks about.

18       There is a waiver of appeal and collateral attack

19  provision in the plea agreement that limits the Defendant's

20  abilities to collaterally attack or appeal any sentence in this

21  case.  The Defendant does agree to waive his right to withdraw

22  his plea of guilty, pursuant to Rule 11(d) of the Federal Rules

23  of Criminal Procedure.  The Defendant may only withdraw his plea

24  in the event the court rejects the plea agreement, pursuant to

25  Rule 11(c)(5) of the federal rules.

1    With that, Your Honor, I believe those are the main

2    points of the plea agreement.

3    THE COURT:  Mr. Weinhardt, do you agree?

4    MR. WEINHARDT:  I agree.

5    THE COURT:  All right.  Mr. Manzi, did you listen as

6    Mr. Russell described the plea agreement?

7    THE DEFENDANT:  I did, Your Honor.

8    THE COURT:  Did that summary match your understanding

9    of your agreement with the Government?

10   THE DEFENDANT:  It did, Your Honor.

11   THE COURT:  Under the terms of the plea agreement,

12   you're giving up your right to appeal and to collateral attack

13   with certain exceptions, and I need to make sure you understand

14   what you're giving up.

15   Everything that's done by this court is subject to

16   being looked at by another court to make sure it was done right.

17   The process is called an appeal, and the court that looks at it

18   is the Eighth Circuit Court of Appeals.  Do you understand?

19   THE DEFENDANT:  Yes, Your Honor.

20   THE COURT:  Under the terms of this plea agreement, you

21   are giving up your right to that appeal process with two

22   exceptions.  The first exception is you can appeal whether you

23   had ineffective assistance of counsel.  The second exception is

24   that you can bring motions for compassionate release and you can

25   appeal the denial of any of those motions.

1    Do you understand that?

2    THE DEFENDANT:  I do, Your Honor.

3    THE COURT:  But in all other respects, you are giving

4  up your right to appeal.  Do you understand?

5    THE DEFENDANT:  I understand.

6    THE COURT:  Collateral attack is different than an

7  appeal.  A collateral attack proceeding arises after all the

8  appeal process is over, and it allows you to challenge your

9  conviction and your sentence by claiming your constitutional

10  rights were violated.  Do you understand?

11    THE DEFENDANT:  I do, Your Honor.

12    THE COURT:  Under the terms of this plea agreement,

13  you're giving up your right to that type of proceeding as well,

14  again, with two exceptions.  You can claim that you had

15  ineffective assistance of counsel, and the second exception is

16  you can claim that what you're admitting to here today is not a

17  crime.  But in all other respects, you're giving up your right

18  to collateral attack.  Do you understand that?

19    THE DEFENDANT:  I do, Your Honor.

20    THE COURT:  Do you understand that your waiver of

21  appeal and your waiver of collateral attack apply both to your

22  conviction and to the sentence you have not yet received?

23    THE DEFENDANT:  I do, Your Honor.

24    THE COURT:  Have you talked to Mr. Weinhardt about your

25  appeal rights and your collateral attack rights?

1          THE DEFENDANT:  I have, Your Honor.

2          THE COURT:  After having those discussions and

3    considering your options, have you decided to give up your right

4    to appeal and to collateral attack with the exceptions listed in

5    the plea agreement?

6          THE DEFENDANT:  I have, Your Honor.

7          THE COURT:  Do you understand that Judge Gerrard is not

8    bound by this plea agreement?

9          THE DEFENDANT:  I understand, Your Honor.

10         THE COURT:  And do you understand that your sentence

11   may not be less simply because you pled guilty instead of being

12   found guilty by a jury?

13         THE DEFENDANT:  Yes, I understand.

14         THE COURT:  At this time, then, I'm going to have Mr.

15   Russell explain the key facts the Government would present at

16   trial if this case went to trial.  Please listen as he does that

17   because I'll ask you if what he says is true.

18         Mr. Russell.

19         You're on mute again, sir.

20         MR. RUSSELL:  It's been one of those days.

21         Before I go into the specific factual basis, will the

22   court inquire of Mr. Manzi whether he's read the factual basis

23   in the plea agreement and does he agree with the factual basis?

24         THE COURT:  Sure.

25         Did you read this entire plea agreement before you

1   signed it, sir?

2         THE DEFENDANT:  Yes, I did, Your Honor.

3         THE COURT:  There's a lengthy factual basis in here.

4   Did you read that as well?

5         THE DEFENDANT:  I did, Your Honor.

6         THE COURT:  And is all of the information within that

7   factual basis true?

8         THE DEFENDANT:  Yes, Your Honor.

9         THE COURT:  All right.  Mr. Russell, now you can do a

10   real condensed version.

11         MR. RUSSELL:  Thank you, Your Honor.

12         Your Honor, with respect to this matter, the evidence

13   at trial would be that, on July 1st, 2017, Mr. Manzi was in the

14   District of Nebraska, specifically between Lincoln and Omaha --

15   the Lincoln/Omaha area -- accessed the Google e-mail account of

16   the person identified as T.P. without his -- without T.P.'s

17   authorization by impersonating T.P. to AT&T carriers to change

18   -- allow AT&T to change the temporary PIN and PIN number for

19   T.P.'s cellular account in order to gain access to T.P.'s phone.

20         Once gaining control of the phone, the Defendant was

21   then able to access information contained in files and

22   applications on T.P.'s Google accounts.  The Defendant then

23   accessed Google accounts related to login credentials for

24   Dropbox account for Wepa that was maintained on T.P.'s cellular

25   phone.  In doing that, he was then able to access customer

1    information and other files contained within both Google and

2    Dropbox.

3            On another occasion, and still on July 1st, of 2017,

4    while Mr. Manzi was in the District of Nebraska, he, again,

5    accessed the Dropbox account of Wepa using T.P.'s Google

6    account, previously accessed by Mr. Manzi, as alleged in Count I

7    changing the password of T.P.'s Dropbox account.  Once in Wepa's

8    dropbox account, Mr. Manzi was able to access information from

9    Wepa, including customer information from that account.  The

10   computer and information owned, maintained, and accessible from

11   both Google and Dropbox were protected computers within the

12   definition of federal law because they are basically computers

13   that access interstate and foreign commerce.

14           THE COURT:  You kind of keep -- you kind of --

15           MR. RUSSELL:  Oh.  The last part?

16           THE COURT:  Yeah.  Do the last part again because I

17   think that -- miss it -- or we didn't --

18           MR. RUSSELL:  Okay.  The computers owned -- the

19   computers and information owned, maintained, and accessible from

20   Google, Incorporated, and Dropbox, Inc., are protected computers

21   within the definition of federal law.

22           THE COURT:  Okay.

23           MR. RUSSELL:  And that's what the Government would

24   show, Your Honor.

25           THE COURT:  Mr. Weinhardt, do you agree that if this

1    case went to trial that evidence would go before a jury?

2         MR. WEINHARDT:  With one slight correction, Your Honor.

3    The -- when Mr. Russell said that Mr. Manzi was present in the

4    District of Nebraska, he was virtually present in the District

5    of Nebraska because Lincoln was the headquarters of Ink Labs,

6    the company of which Mr. Manzi was the CEO and the business

7    competitor of Wepa.

8         Mr. Manzi, actually, at the time of these -- some of

9    these events was traveling outside of the district but

10   electronic signs and signals would have flowed through Nebraska

11   for him to be enabled to perform the acts that were described

12   here.  So we don't dispute that venue and jurisdiction is proper

13   in Nebraska, but he wasn't physically present in Nebraska,

14   according to the discovery information.

15        THE COURT:  All right.  Mr. Russell, do you agree with

16   that?

17        MR. RUSSELL:  I agree that the information that we

18   would have would show that there was sufficient venue in the

19   District of Nebraska for the crime.

20        THE COURT:  Got it.

21        Mr. Manzi, did you listen as the attorneys described

22   the evidence that would be presented at trial?

23        THE DEFENDANT:  I did, Your Honor.

24        THE COURT:  Is all of that true?

25        THE DEFENDANT:  There is one small -- I don't know if

1    it's -- in the plea agreement, with respect to obtaining access

2    to Troy Pepper's phone and then, from there, getting into Gmail

3    and Google accounts and then, from there getting into Dropbox,

4    that's all correct.  I just want to -- I think it said that

5    there was a -- if I understood what Attorney -- U.S. Attorney

6    Russell said was there was a -- like, a stored credentials on

7    the phone itself.  I just -- I -- if I understood what U.S.

8    Attorney Russell said, I just want to clarify that there --

9    like, there wasn't -- I didn't -- in order to get from Google to

10   Dropbox, I didn't use stored credentials on the phone, if I

11   understood what he had said.

12            THE COURT:  Okay.

13            MR. WEINHARDT:  If I can put some definition to that

14   also, Your Honor -- and the factual basis in the plea agreement,

15   we negotiated over carefully, both sides, so that we were

16   precise about what it said.  It wasn't that Mr. Manzi took

17   existing credentials and just logged in with them; it is that he

18   created a new set of credentials using the access that he had by

19   virtue of taking over Pepper's phone.

20            THE COURT:  All right.  And that is what I understood

21   of what Mr. Russell said.  That was my interpretation of what he

22   said.  So -- but the factual basis that is set out in the plea

23   agreement is correct.  Is that right?

24            THE DEFENDANT:  Yes.  Yes, Your Honor.

25            THE COURT:  Okay.  On July 1st, of 2017, from wherever

1  you might have been, did you access a computer here in Nebraska?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  All right.  And did you do so

4  intentionally?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Did you have authorization to do that?

7          THE DEFENDANT:  No, Your Honor.

8          THE COURT:  And when you did that, did you obtain

9  information from a Google e-mail account of T.P.?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Mr. Russell, what is, precisely, the

12  definition of a protected computer?

13          Grab the book there.

14          MR. RUSSELL:  Yeah.

15          THE COURT:  Sorry.  This is new to me.  I just don't

16  know the answer to this question.

17          MR. RUSSELL:  In this case, the precise definition

18  we're referring to is 18 USC 1030(a)(2), which defines a

19  protected computer as which is used in or affecting interstate

20  or foreign commerce, including a computer located outside of the

21  United States in such a manner.  So, in fact, both Google and

22  Wepa were engaged in interstate and foreign commerce --

23          THE COURT:  Got it.

24          MR. RUSSELL:  -- and Dropbox, for that matter.

25          THE COURT:  All right.  Do you agree, sir, that the

computer that you accessed on July 1st, of 2017, to access the

Google e-mail account of T.P., was a computer that was being

used in interstate commerce?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  As to Count II, for that same

date, July 1st, of 2017, did you also access a Dropbox account,

that being the account of Wepa, Inc., that account being for

somebody here in Nebraska?

MR. RUSSELL:  Your Honor, Wepa is not located in

Nebraska.

THE COURT:  Okay.  So what is the venue on that one?

MR. RUSSELL:  I think the venue, what they're referring

to is that the venue is that -- I believe it's one of two

things.  Mr. Manzi, we believe, was located in Nebraska on his

way to a flight to Las Vegas at the time he accessed it, on our

specific time, with respect to Count II.

What Mr. Weinhardt is saying is even if it is not

specifically in -- he's not physically in the district, he's

accessing computers through Ink Labs, which is located in

Lincoln, Nebraska, at the time that he was accessing all of this

other data that we're discussing.

THE COURT:  So was T.P. from Ink Labs?

MR. RUSSELL:  T.P. was located in Alabama, along with

Wepa.  They're both -- they're both physically located in

Alabama, but the information that Mr. Manzi was accessing is

through Google, located outside the state of Nebraska, and
through Dropbox, also located outside the state of Nebraska, but
protected computers because they're engaged in interstate and
foreign commerce.

      THE COURT:  And Ink --

      MR. RUSSELL:  And Ink Labs -- Ink Labs --

      THE COURT:  Is there --

      MR. RUSSELL:  -- is located in Lincoln, Nebraska -- at
least it was at that time.

      THE COURT:  Okay.  So on Count II, I take it, then,
that you accessed the Dropbox account of Wepa in some way by
connecting through a computer here in Nebraska.  Is that
correct?

      (No verbal response.)

      THE COURT:  Okay.  I need everybody to just tell me,
what is the question I'm supposed to ask?  Because I've got
Alabama, I've got Ink Labs here in Lincoln, I've got -- I've got
T.P. covered, but Wepa and the Dropbox on Wepa, what exactly is
the venue connection on that?

      MR. WEINHARDT:  I think the correct question is
whether, in accesses Dropbox through Mr. Pepper's credentials
that are the basis for Count I, electronic signs and signals
traveled through the District of Nebraska on their way to
wherever Dropbox is or on their way to affecting the Wepa
institution in Alabama.  And the parties have stipulated that

yes, those signs and signals did go through Nebraska in that --
in that communication.

THE COURT: Okay. Is that right, Mr. Manzi?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You look hesitant. Is it right?

THE DEFENDANT: May I speak with Mr. Weinhardt?

THE COURT: Sure. I'm going to put you in a breakout room.

Okay. We're going to go off the record for a moment, Jeri.

(Off the record.)

(On the record.)

THE COURT: All right. Mr. Manzi, I appreciate the fact that everybody's educating me on how to get this correct because this is a little complicated for me. But the question is: My understanding is that you used T.P.'s Gmail account or you accessed T.P.'s Gmail account. Is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. When you did that, to gain access to Wepa, did signals pass through and travel through Ink's computer account here in Nebraska?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And by doing so, are you agreeing that the computer was a computer that was involved in interstate commerce?

1        THE DEFENDANT:  Yes, Your Honor.

2        THE COURT:  And did you, thereby, get access to the

3   Dropbox account for Wepa?

4        THE DEFENDANT:  Yes, Your Honor.

5        THE COURT:  All right.  Any additional questions, Mr.

6   Russell?

7        MR. RUSSELL:  No, Your Honor.

8        THE COURT:  Mr. Weinhardt?

9        MR. WEINHARDT:  No, Your Honor.

10       THE COURT:  Mr. Russell, do you believe the guilty plea

11  is knowing, intelligent, and voluntary and that there is a

12  factual basis for it?

13       MR. RUSSELL:  I do, Your Honor.

14       THE COURT:  Mr. Weinhardt, do you agree?

15       MR. WEINHARDT:  I do.

16       THE COURT:  Mr. Manzi, do you want this court to accept

17  your plea of guilty?

18       THE DEFENDANT:  Yes, I do, Your Honor.

19       THE COURT:  Do you have any questions of me before I

20  proceed?

21       THE DEFENDANT:  No, Your Honor.

22       THE COURT:  To Count I of the information, which

23  alleges that, on or about July 1st, of 2017, while in the

24  District of Nebraska, you did -- or in contact with the District

25  of Nebraska, you did intentionally access and attempt to access

```
1    a computer without authorization and, thereby, obtain
2    information from a protected computer, meaning a computer
3    engaged in interstate commerce of Google, LLC, for the Google
4    e-mail account of T.P., what do you plead?
5              THE DEFENDANT:  I plead guilty, Your Honor.
6              THE COURT:  To Count II of the information, which
7    alleges that on or about July 1st, of 2017, while in the
8    District of Nebraska or connecting into the District of
9    Nebraska, you did intentionally access and attempt to access a
10   computer without authorization, specifically, in this case, a
11   protected computer of Dropbox, Inc., that being a computer
12   engaged in interstate commerce, for the Dropbox account of Wepa,
13   what do you plead?
14             THE DEFENDANT:  I plead guilty, Your Honor.
15             THE COURT:  I do find that your guilty plea is knowing,
16   intelligent, and voluntary and that there is a factual basis for
17   it.  I will recommend to Judge Gerrard that he accept your plea
18   of guilty and your plea agreement.  He'll take up both of those
19   issues at sentencing, and we're looking at a sentencing date of
20   December 13th -- hang on --
21             Jeri, what is the -- it can't be December 13th.  That's
22   today.
23             COURTROOM DEPUTY:  Did you need me to look for an
24   alternate date?
25             THE COURT:  You don't have the date on my CEO so I
```

1    wasn't seeing it at all, and I'm not seeing it in the e-mail.

2          Oh.  There it is.

3          March 23rd at 2 p.m. -- does that work for everyone?

4          MR. RUSSELL:  Yes, Your Honor.

5          MR. WEINHARDT:  May I just check my calendar quickly?

6          THE COURT:  Of course.  Of course.

7          MR. WEINHARDT:  March 23rd works for me, Your Honor.

8          THE COURT:  All right.  Mr. Manzi, does it work for you

9    as well?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  All right.  I will just let you know, Mr.

12   Manzi, that there have been concerns about whether you have

13   violated pretrial conditions through your contacts with

14   employment.  We haven't -- we haven't concluded that you have.

15   So you are allowed to continue to be on pretrial release at this

16   point in time.

17         But I will warn you that if you violate the conditions

18   of release after this, you need to understand you're no longer

19   presumed innocent; you are guilty.  And as a result of that, you

20   will be placed in jail.  Do you understand that?

21         THE DEFENDANT:  Yes, I understand.  What were the

22   concerns?

23         THE COURT:  The concerns, essentially, were that you

24   were continuing to have contact with people and working with

25   people that could be witnesses in this case, and there were

concerns about -- once you moved to Massachusetts, is where the concerns really came to a head.

So what I'm going to do is, rather than get into a dialogue with you about this at this time because that would not be appropriate, is I'm going to have you and Mr. Weinhardt, and if Mr. Russell can help illuminate it, I'll let him be involved too.  But just be cautious and look over the terms of your conditions of release and make sure that you comply with them.

Do you understand?

THE DEFENDANT:  Will do, Your Honor.

THE COURT:  All right.

MR. RUSSELL:  -- one thing, Your Honor --

THE COURT:  Yeah?

MR. RUSSELL:  -- we received information and verified this information that Mr. Manzi was at least accessing the LinkedIn account of Mr. -- of the person identified as T.P.  We do not believe that there was any direct contact, but I don't want to make it sound like Mr. Manzi had contact with the victim, but he -- but it is disconcerting to a victim to have the Defendant check his LinkedIn account.  That becomes a little bit of a -- it's just disconcerting to have that happen.

So I would ask Mr. Manzi -- maybe the LinkedIn account of the victim here maybe should not be accessed, and I would leave it at that.

THE COURT:  Yeah.  Don't -- if you're in that

1  gentleman's shoes, sir, you're wondering why -- why Mr. Manzi is

2  looking you up and especially when the question is whether

3  you're going to go to trial or whether you're going to plead

4  guilty and whether he is supposed to be testifying.  And so

5  there have been concerns that -- on our end, about your conduct

6  and what your conduct meant, and that's why I said we are not

7  saying at this point in time that you have violated, but the

8  best course of action going forward is leave those people alone,

9  no contact at all, don't look them up, don't connect to their

10  sites, don't look them up on Facebook, don't send them messages,

11  nothing because everything that you do makes us wonder.

12          All right.  We are in recess.

13     (Proceeding concluded at 1:51 p.m.)

14

15

16                    C E R T I F I C A T E

17

18     I, KELLY CUSTARD, court-approved transcriber, certify

19  that the foregoing is a correct transcript from the official

20  electronic sound recording of the proceedings in the

21  above-entitled matter.

22

23

24  S/Kelly Custard                          1/12/23
    Kelly Custard                           Date

25