IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 4:19-CR-3094 |
| vs. | |
| JONATHAN MANZI, | TENTATIVE FINDINGS |
| Defendant. | |

The Court has received the revised modified presentence investigation report in this case. The defendant has filed a sentencing statement (filing 216) containing several objections to the presentence report, and a motion for downward variance (filing 217).

IT IS ORDERED:

1. The Court will consult and follow the Federal Sentencing Guidelines to the extent permitted and required by *United States v. Booker*, 543 U.S. 220 (2005) and subsequent cases. In this regard, the Court gives notice that, unless otherwise ordered, it will:

    (a) give the advisory Guidelines respectful consideration within the context of each individual case and will filter the Guidelines' advice through the 18 U.S.C. § 3553(a) factors, but will not afford the Guidelines any particular or "substantial" weight;

    (b) resolve all factual disputes relevant to sentencing by the greater weight of the evidence and without the aid of a jury;

(c) impose upon the United States the burden of proof on all Guidelines enhancements;

(d) impose upon the defendant the burden of proof on all Guidelines mitigators;

(e) depart from the advisory Guidelines, if appropriate, using pre-*Booker* departure theory; and

(f) in cases where a departure using pre-*Booker* departure theory is not warranted, deviate or vary from the Guidelines when there is a principled reason justifying a sentence different than that called for by application of the advisory Guidelines, again without affording the Guidelines any particular or "substantial" weight.

2. The defendant objects to the presentence report on three general issues, which affect the Guidelines calculation in two ways: loss calculation and an enhancement for obstruction of justice.

*a. Causation of Loss*

First, the defendant objects to the government's version of the offense. The defendant pled guilty to one count of obtaining information from a protected computer in violation of 18 U.S.C. § 1030(a)(2), based on his intrusion into the Dropbox account of Wepa, Inc. (a competitor to the defendant's company, Ink Labs, Inc.) and the Google account of one of Wepa's employees. *See* filing 209 at 2-3. The government asserts that the defendant used information he obtained through those intrusions to contact Wepa customers, causing Wepa to lose business. The defendant admits the intrusion and subsequently contacting Wepa customers, but

denies using information from the intrusion to make contact. Filing 216 at 3. The implication of this factual dispute is that, if the government is correct, there's a causal link between the offense and Wepa's damages—but under the defendant's version, the loss of business wasn't proximately caused by the offense, which affects the loss calculation.[1]

The offense level for violation of § 1030(a)(2) is determined under the Guidelines for theft and fraud offenses, U.S.S.G. § 2B1.1. *See* U.S.S.G. App'x A. And under § 2B1.1, the government has the burden to prove actual loss by the preponderance of the evidence. *United States v. Markert*, 774 F.3d 922, 925 (8th Cir. 2014). For purposes of § 2B1.1(b), loss is calculated as the greater of the actual or intended loss. Actual loss is defined as the "reasonably foreseeable pecuniary harm that resulted from the offense." § 2B1.1 cmt. n.3(A)(i). And "reasonably foreseeable pecuniary harm" is further defined as that harm that the defendant knew, or under the circumstances, reasonably should have known, was a potential result of the offense. *Id.* cmt. n.3(A)(iv). Intended loss, by comparison, includes any "pecuniary harm that the defendant purposefully sought to inflict." *Id.* cmt. n.3(A)(ii). Ultimately, this Court needs to make a "reasonable estimate of the loss." *Id.* cmt. n.3(C); *United States v. Rice*, 699 F.3d 1043, 1049 (8th Cir. 2012).

But the starting point is that the loss must be an actual or intended result of the offense. *See* U.S.S.G. § 1B1.3(a)(3); *cf. Paroline v. United States*, 572 U.S. 434, 443-44 (2014) (equating losses "as a result of the

---

[1] The Court notes that should the Court accept the parties' Rule 11(c)(1)(C) plea agreement and stipulation as to restitution, *see* filing 209 at 4-5, any dispute as to the Guidelines calculation would **as a practical matter be moot**.

- 3 -

offense" with proximate cause). And if the defendant's contact with Wepa's customers was factually unrelated to the offense of conviction, then it's questionable whether any of Wepa's losses are fairly attributable to the offense for purposes of § 2B1.1. But the Court will resolve this issue on the evidence at sentencing.

*b. Inclusion of Business Losses*

Second, the defendant also questions whether Wepa's business losses count at all. In addition to the general definitions set forth above, § 2B1.1 cmt. n.3(A)(v)(III) expressly provides that for offenses under § 1030,

> actual loss includes the following pecuniary harm, regardless of whether such pecuniary harm was reasonably foreseeable: Any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other damages incurred because of interruption of service.

The defendant's argument, in a nutshell, is that losses resulting from § 1030 offenses are focused on costs associated with damage to computer systems and responding to the intrusion—not lost profits resulting from the use of unlawfully obtained information.

This Court and others have circumscribed losses in the context of § 1030 offenses to the reasonable costs of investigating an intrusion and repairing any resulting damage. *E.g. United States v. Stratman,* No. 4:13-CR-3075, 2014 WL 3109805, at *2 (D. Neb. July 8, 2014). But the

Court isn't persuaded that authority is applicable here, where the issue isn't whether the expenses incurred in responding to an intrusion were reasonable. *See id.* Section 2B1.1 cmt. n.3(A)(v)(III) doesn't *cabin* losses from a § 1030 offense—rather, it *expands* them to certain categories of unforeseeable damages that otherwise wouldn't be counted under the more general definitions of actual or intended loss. Absolutely nothing in Note 3(A)(v)(III) suggests that an actual loss resulting from the offense or its relevant conduct, or a loss intended to result from the offense or its relevant conduct, doesn't count *unless* it falls within Note 3(A)(v)(III).

In other words, Note 3(A)(v)(III) doesn't answer the broader question presented here: If a defendant violates § 1030 and obtains information that's then used to inflict financial losses on a victim, are those losses counted under § 2B1.1(b)? The defendant has directed the Court to no authority suggesting they can't be, if they're shown factually to have been the actual or intended result of conduct relevant to the offense. And if the government's theory is borne out—if the defendant used information obtained via the offense to deliberately interfere with Wepa's business, costing Wepa money—then it's not a stretch to say that Wepa's losses resulted from the defendant's offense and may even have been an object of the offense. *See* § 1B1.3(a)(1)(A) & (3). But the Court will, again, resolve that on the evidence at sentencing.[2]

---

[2] The Court also notes, for the sake of completeness, that the presentence report didn't assess a two-level enhancement to the offense level pursuant to § 2B1.1(b)(18) for an offense under § 1030 which "involved an intent to obtain personal information," the definition of which includes "private correspondence, including e-mail" and "financial records," *see* § 2B1.1 cmt. n.1. But that certainly seems to describe the offense conduct. *See* filing 209 at 3.

*c. Obstruction of Justice*

Finally, the defendant objects to the presentence report's assessment of a two-level enhancement to the offense level pursuant to U.S.S.G. § 3C1.1 for obstruction of justice. Filing 216 at 4-5, 9-10. The government bears the burden of proving the applicability of an enhancement to the offense level. *United States v. Shelabarger*, 770 F.3d 714, 717-18 (8th Cir. 2014). Here, the enhancement is premised on the defendant allegedly testifying falsely at a pretrial hearing in this case.

Specifically, the defendant had (through counsel) filed a "Motion for Relief from Invasion of the Attorney-Client Privilege" (filing 34), alleging that the government had failed to properly screen attorney-client privileged materials from documents and information it had obtained from the defendant pursuant to a search warrant. Some of the defendant's emails with attorneys and others employed by Ink Labs had been forwarded to an associate named Timothy Mercier, which the government believed to have waived any claim of privilege with respect to those emails. *See* filing 61 at 6-7.

The defendant, however, contended that Mercier, a long-time friend of the defendant, was "working as a personal assistant to [the defendant] at Ink and was confidentially privy to all manner of privileged and confidential corporate communications of Ink." Filing 35 at 8. And at an evidentiary hearing held by the Magistrate Judge on the defendant's motion, the defendant testified that Mercier was employed as an "independent contractor," compensated "through money, through room, through board, through travel." Filing 114 at 153, 186-87. That business relationship was described as "sporadic," and the defendant testified that

Mercier was sometimes compensated by Ink Labs, and sometimes by the defendant personally. Filing 114 at 153, 157-62.

The Magistrate Judge, however, was unpersuaded—she found that the defendant had failed to substantiate his testimony with any evidence establishing any sort of employment relationship, and found that the defendant's testimony wasn't credible. Filing 124 at 9-10. Over the defendant's objection (filing 128), the Court adopted the Magistrate Judge's findings. Filing 149 at 4 n.4. In other words, this Court has already found that the defendant's hearing testimony wasn't credible.

Section 3C1.1 provides for a two-level enhancement when

> the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense[.]

But the Guidelines also explain:

> This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit guilt or provide information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision. In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be

> cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice.

§ 3C1.1 cmt. n.2. That said, covered conduct expressly includes "providing materially false information to a judge or Magistrate Judge[.]" *Id.*, cmt. n.4(F).

The defendant objects on three points. First, he takes issue with the government describing him as having testified that Mercier "was an employee of Ink Labs, Inc."—instead, he points out that he *actually* said Mercier was an "independent contractor." Filing 216 at 9. But that argument is misplaced, as the defendant's very next point demonstrates: He also insists that "the difference between an independent contractor and an employee does not determine the question of whether Mr. Mercier was capable of receiving confidential attorney-client privileged communications." Filing 216 at 9. Exactly right, which is why the defendant's nitpicking about his testimony doesn't matter.

The government's description of the defendant as having testified that Mercier was an "employee" wasn't, in the Court's reading, meant to use the word "employee" to draw a relevant distinction between a "W-2 employee" or an "independent contractor." *See* filing 114 at 153. That's never been the issue. Rather, it's always been whether the defendant's testimony about having hired Mercier was credible at all: Was Mercier an "employee" in the sense that Ink Labs paid him for services provided, or was he not employed by Ink Labs at all? The Court has already found,

based on the absence of any corroborating evidence, that the defendant wasn't credible. That said, the Court is mindful that it remains the government's burden to establish the factual basis of an enhancement to the offense level. *See Shelabarger*, 770 F.3d at 717-18. The government, then, can decide to what extent it wants to rely on the materials already in the record or to supplement it with new evidence.

Last, the defendant questions whether the evidence shows he had the *mens rea* necessary for the obstruction of justice enhancement—that is, whether (even if his testimony wasn't credible), he testified falsely under oath on a material matter "willfully rather than out of confusion or mistake." *See United States v. Reed*, 978 F.3d 538, 544 (8th Cir. 2020); *United States v. Sherrod*, 966 F.3d 748, 754 (8th Cir. 2020).

Obviously, before imposing an enhancement under § 3C1.1, the Court "must review the evidence and make independent findings necessary to establish a willful impediment to, or obstruction of, justice." *Sherrod*, 966 F.3d at 754. Accordingly, the Court will do so on the evidence in the record at sentencing.

*d. Motion for Variance*

The defendant has also moved for a downward variance based on his personal circumstances, the circumstances of the offense, and the parties' Rule 11(c)(1)(C) plea agreement. Filing 217; *see* filing 216 at 10-13. The Court will resolve that motion at sentencing.

3. Except to the extent, if any, that the Court has sustained an objection, granted a motion, or reserved an issue for later resolution in the

preceding paragraph, the parties are notified that the Court's tentative findings are that the presentence report is correct in all respects.

4. If any party wishes to challenge these tentative findings, that party shall, as soon as possible (but in any event no later than three (3) business days before sentencing) file with the Court and serve upon opposing counsel an objection challenging these tentative findings, supported by a brief as to the law and such evidentiary materials as are required, giving due regard to the local rules of practice governing the submission of evidentiary materials. If an evidentiary hearing is requested, such filings should include a statement describing why a hearing is necessary and how long such a hearing would take.

5. Absent timely submission of the information required by the preceding paragraph, the Court's tentative findings may become final and the presentence report may be relied upon by the Court without more.

6. Unless otherwise ordered, any objection challenging these tentative findings shall be resolved at sentencing.

Dated this 2nd day of March, 2023.

BY THE COURT:

*John M. Gerrard* (signature)
John M. Gerrard
Senior United States District Judge